Good morning. I'd like to reserve three minutes of my time for rebuttal. May it please the So in preparing for my oral argument here today, I went back and read the government's brief, particularly their statement of facts. And when I was reading their statement of facts, I was thinking, oh my God, if I was one of you, and I read those facts, I would think, this is a messy inter-tribal governmental dispute. And under our Ninth Circuit precedent, we don't get involved in inter-governmental disputes, nor do our district courts. Mr. Marston, you lose, government wins, so let's go home. But I'm hoping that you're going to give me the opportunity here today, and I'm going to have to speak fast because I don't have a lot of time, to convince you that this is not an inter-tribal governmental dispute. We're not asking you to resolve this. What this case is really about is the abuse of discretion by the Secretary of the Interior, acting through her delegated representatives, officials of the Bureau of Indian Affairs, BIA. Here, those officials made three decisions, and in doing so, they violated federal law. Isn't their decision all about inter-party disputes or inter-tribal disputes? Not in this case. Isn't that what your client wants us to find, though? I mean, she wants to be in charge of the tribe. No, not at all. That's why I need to clear up the confusion, right? What are you asking us to do to have the district court recognize the 2013 General Counsel's decision, right? No. All right. Can you explain to me what you're asking? I'm asking you to find that here, the Secretary violated her own administrative laws, and therefore, this case arises under the Constitution and laws of the United States, and therefore, the district court had jurisdiction to determine whether or not the Secretary and her delegated representatives violated the APA. In doing what? In refusing to give deference to and read and consider the tribal court's decision in this case in determining which tribal officials they were going to recognize. And that's the 2013 General Counsel's decision, right? Yes. Yes, exactly. Ultimately, what you want is recognition of that decision over the decision that DOI accepted. No. It's a fine line. I'm splitting a hair here, but it's a hair that needs to be split. I'm missing where the hair can be split. Can you say it again? Yes, I will. Because what you're saying, I would agree. If I was asking the court to do that, the court doesn't have any jurisdiction to do that. District courts don't get involved in the internal political affairs of an Indian tribe, because that requires interpretations of tribal law, not federal law. It doesn't arise under 1331 jurisdiction. That's not what I'm asking the court to do. What the court needs to look at is the fact that the Secretary of the Interior has, by federal regulation, has created a judicial body. It's called the Interior Board of Indian Appeals. And that court sits in place of the Secretary. And that court has developed three rules of administrative law, all of which come into play in this case. The first rule is we don't, the BIA doesn't get involved in the internal political affairs of a tribe. The second one is if the BIA has to contract under 638, under the Indian Education Self-Determination Act, and has to recognize some tribal officials for purposes of contracting, they can go back and recognize those officials who were elected at the last undisputed election. That's the second rule. And then the third rule that's been developed in administrative law is that the Bureau of Indian Affairs is going to give deference to tribal sovereignty, right? They're going to recognize that when the tribe, acting through an administrative body or tribal court, interprets a tribal law or makes a tribal decision that's not directly in conflict with federal law, the Bureau of Indian Affairs is going to give deference to that. They're going to recognize it. They're going to consider it. Can I sort of cut to a chase? As I understand it, the General Counsel made a decision in 2013. 2012. I'm sorry? 2012. 2012, thank you. But then it seemed to reverse itself, or at least a certain body of the General Counsel made a different decision the following year in 2014. And my question is, wouldn't this action require a court to decide which interpretation to accord comedy to? No. Okay, why not? So, first of all, the 2012 decision, everybody agrees. There was no internal tribal dispute at that time, right? Everybody agrees that the members of the General Counsel were the members of the General Counsel. Everybody agrees that the members of the Business Committee were the members of the Business Committee. There was no internal tribal dispute. That had been resolved in federal court. There had been a settlement agreement. Everybody, there was a functioning tribal government that the Bureau of Indian Affairs recognized. It was that General Counsel that enacted an ethics code. It was that General Counsel that did the forensic audit. But doesn't it involve getting into tribal matters to decide that that decision is above reproach, whereas there may be some question raised about a later decision that reinstates Mr. Del Rosa's voting rights or ability to hold office? Again, no, because I'm not asking the court to decide who's the lawful governing body of the tribe. I'm asking the court to say, look what the secretary did in this case. Was she required as a matter of administrative federal law in deciding who she was going to recognize, did she have an obligation to consider the 2012 tribal court decision? If she did, if she had an obligation under federal law to consider it and she failed to consider it, then she violated federal law. And the court has 1331 jurisdiction, and it can sit and decide whether that was a violation of the Administrative Procedure Act. Am I being clear here? I think so. If I understand it, if you're saying in essence the APA claim here would be whether the secretary abused its discretion in making its recognition determination of this 2012 body without delving into which tribal faction is the governing body. Exactly. San Francisco Chronicle publishes an article holding that the mayor is a liar and a cheat and had an affair, and the mayor sues the San Francisco Chronicle for defamation. This court is asked to decide whether it was defamatory or not. Doesn't this court have to consider the Supreme Court's decision in New York Times versus Sullivan? And wouldn't it be an abuse of your discretion if you didn't at least consider the decision, read it, and consider it? That's what happened here. The secretary had to make a decision about who she was going to recognize. She's got a well-established administrative law that says, I'm going to give deference to tribal sovereignty. I'm going to recognize tribal court judgments that resolve intertribal disputes and interpret and apply tribal law, as long as that decision is not clearly contrary to federal law. How do we know that Ms. Del Rosa is representing or has standing to sue on behalf of her tribe? And wouldn't delving into that issue raise jurisdictional problems as well? Well, because she was an – first of all, nobody disputes that Wendy Del Rosa wasn't an elected official of the tribe. She's a member of the business committee, which is the governing – that everybody, under the tribe's constitution, if the general counsel is not in session, it's the business committee that's the governing body of the tribe and carries on the day-to-day business affairs of the tribe. I think that she, as the secretary-treasurer, as an elected official of the tribe, has standing to challenge the secretary's abuse of discretion in refusing to recognize a final, non-appealable judgment of the tribal court. Counsel, can the 2013 general counsel decision be recognized without sorting out who are legitimate members of the tribe? Because aren't those members the signatories to that decision? Their membership is being challenged, right? Different people claim membership is legitimate for some people and not for others. Can the government recognize the tribe and just assume that that decision was issued legitimately by legitimate members of the tribe? So this may be difficult to understand, but the answer to your question is no. The BIA doesn't get involved in the internal political affairs of the tribe. It's up to the tribe, as a matter of tribal law, to decide who its elected officials are. But we have this Indian Education Self-Determination Act, and Congress said, Bureau of Indian Affairs, when you receive requests from an Indian tribe to contract to take over the services you function, you shall contract. And so this rule of administrative law was developed in which the Interior Board of Indian Affairs, sitting as a secretary, says, BIA, because you are mandated by federal law to contract with some tribal official, you've got to make a decision solely for the purposes of contracting who you're going to recognize. And they've approved this process whereby the secretary goes and looks to see who was the last duly elected tribal officials in an uncontested election. And we're going to contract with those officials solely for the purposes of 638 contracting, not to recognize who the lawful governing body of the tribe is, if you understand the distinction. So doesn't the Eighth Circuit's decision in good faith say that they can do it on an interim basis, exactly what you talked about, upon some tribal government? Yes, and we actually recite to that case, because that's a good example, because there the Eighth Circuit specifically held that the district court had 1331 jurisdiction to take a look at and see if the secretary abused, in this case, her discretion in recognizing, in that case, those particular elected officials. So how did this, quickly, how did the secretary violate the law here, right? So she made a decision to recognize the 2012 Tribal Business Committee, right? In doing that, and you look at the record, there's absolutely no evidence in the record. In doing that, she didn't even read, let alone consider, the tribal court's decision. So immediately, by recognizing the 2012 Business Committee, she automatically overturned the tribal court's decision, reinstated Philip Del Rosa, who stole $2 million worth of the tribe's money. That's my point, and I know you wanted to save some time. Oh, yes. So my point is simply this. This arises under federal law, because you're looking to see whether the secretary violated her own administrative law. That gives the district court 1331 jurisdiction, and therefore it can look to see whether the secretary's failure to consider the 2012 tribal court decision in rendering her decision as to who she's going to recognize for purposes of the 638 contract was an abuse of discretion and a violation of the APA. I'll reserve the rest of my time. Thank you. Thank you, counsel. Good morning, Your Honors. I'm Mary Gabrielle Sprague, representing the Department of the Interior. So just to clarify, the decision is a 2013 decision. It's not a 2012 decision, October 22nd, 2013. Mr. Marston is now arguing for APA review of the IBIA decision. We agree that they're entitled to APA review of the IBIA decision, and we're happy to defend that decision. Three arguments were made to the IBIA by Wendy Del Rosa. The first was that she says, yes, I agree, you can look to the last undisputed tribal counsel, but that's me, because I was elected with Darren Rose in April 2014. It's me and Darren. But the IBIA said, well, I can't conclude that's undisputed because things fell apart right after that. And then her next argument, which I feel is inconsistent with the first argument, was, and by the way, Darren Rose is not really a member of the tribe. Ms. Sprague, I'm sorry to interrupt. Do you think that an APA claim could be resolved without delving into intratribal disputes, if a claim were merely focused on just the reasonableness of the agency's action in its recognition decision or contract decision? Yes, because in this place, if I'm understanding, the plaintiff is saying she didn't want them to delve into it. Well, she said two inconsistent things, which is why I brought up Darren Rose, which in that case there was no decision by the tribe. She just wanted the BIA to decide that Darren Rose wasn't a member. But then her third argument, which I feel is inconsistent with the prior two, was, well, don't get into all of that. Just look at the 2013 general counsel decision and just enforce that, because that's principles of comedy and it's been decided, and just enforce that and you don't need to get into it. I disagree with Mr. Marston's statement that the IBIA did not consider that, both the October 2013 decision. I'm sorry to interrupt again, but I'm just sort of trying to track this one point. If there's a possible APA claim there, as I understand it, the case was dismissed without leave to amend. Wouldn't the request then be to send it back to the court to allow plaintiff to re-amend with a properly articulated APA claim that does not involve intratribal disputes, if you're conceding that there's potential jurisdiction for such a claim? Your Honor, that is one possibility, but I don't think that it is the best course in this case, because this case, the IBIA had before it a decision that the BIA made in 2015 to give interim recognition to the last undisputed tribal counsel, which was 2012. At that point, it was just three years before. At this point, we're a lot farther down the road. We would urge that the best course for this process is that this district court dismissal be affirmed, and if Ms. Del Rosa has some new claim. But the problem with that is the dismissal was predicated on a lack of subject matter jurisdiction. But you're arguing today that there is a possible claim of APA review that does not involve intratribal dispute, but plaintiff wasn't allowed to amend to make that sort of a claim. Well, she chose not to make it. And even through these appeal proceedings, she's still choosing not to make it because she still is maintaining that it's this 2013 decision that should be given precedence over the others. I mean, she's doubling down on that argument. And I would agree. And I would agree that that sort of type of claim very well might wade into things that this court cannot get into. But I guess I'm troubled with the notion that plaintiff might be able to assert a viable APA claim, but wasn't given leave to amend because the court cut it off at the pass. I think, Your Honor, because it was clearly a choice by the plaintiff. The relief she could have gotten if she had challenged the IBIA's decision was to set aside the approval of the 2015 contract. Now, we're seeing migration in the claim. When the complaint was filed, we understood in the district court that the challenge was to the 2015 decision, which we agree could be reviewed under the APA. But then the district court briefing focused on this one little letter from July 2017, where the superintendent wrote and said, oh, well, given the IBIA's reasoning, we're going to accept your contracts, Darren Rose, Phillip Dell Rosa, for 2016 and 2017 as well. That's not final agency action. But then the complaint goes a step farther and really focuses on this one argument among all that were made. Oh, just look at that 2013 decision. Everybody agrees that you can't get into deciding who's a member of the tribe and who financial impropriety justifies taking away their voting rights. Everybody agrees on that. You just look at this one decision. That is just fundamentally wrong. It would have been okay had that been the last word. But it wasn't the last word. That decision is being treated as a judicial decision, and I understand that a tribe can have a different judicial system than we do, and that's not what we're saying. But when you have comedy, which is what they're arguing, requires a final decision of a tribunal, when one of those judges, Darren Rose, then leaves and repudiates the decision and joins up with Phillip Dell Rosa, the defendant in that decision, and they together with two other members of the tribe then decide that Phillip is reinstated and that the 2014 election was void and we recognize the 2012 business committee, this doubling down on this theory, I think, leaves it such that sending it back to leave to amend really is not warranted. So I heard your opposing counsel argue that the district judge didn't consider the 2012-2013 decision. Then I thought I heard you saying, oh, that's wrong. The district court did consider that. Did I hear you right? Well, certainly the IBIA considered it, and the IBIA decision was before the district court. And the IBIA decision deals with both the 2013 decision and the 2014 decision, ER 101. Now, there isn't an elaborate discussion of the 2014 decision, but it is noted and the reasoning of the IBIA is clear that that was taken into account. That was before the district judge. I think the reason that the district judge didn't spend a lot of time parsing 23-2014, it was a bench ruling, but I believe that that was appropriately considered. And he looked to the relief that he understood that you are saying I can't get into that, but you're saying if I just pick out this one decision and enforce that decision, I won't be getting into that. And the judge said it's just logically inconsistent. That doesn't make sense because when you have an ongoing dispute and conflicting decisions, I can't just pick one. There was never a neutral principle articulated. I read the reply brief, which seems to suggest a principle that first in time prevails. But where does that rule come from? I've got another question for you. Can Wendy Del Rosa bring suit on behalf of the entire tribe? Your Honor, I don't believe so as one member of a three-member business committee, but the district court sidestepped that question. But if that's a question, don't we have to resolve that? Well, I don't think so because the district court did not focus on injury. He said for the sake of argument, excuse me, I'll accept that you're injured. And I don't believe he said only as an individual. The plaintiffs, whoever is before me, I'll accept you're injured. The problem is what you're asking. You're not presenting any claim that's redressable because you're saying do this, but you're not allowed to do it. And I think the federal question jurisdiction articulation, there's different ways of articulating jurisdiction versus failure to state a claim. When you start looking at the APA and you're looking at 702 and 704 and 706 and trying to decide exactly where the problem is. I was thinking this was more of an Article III standing issue. But for redressability, I would say it relates to the subject matter jurisdiction because I think what the judge was saying there is you could have brought an APA claim to challenge the IBI decision. But what you really are bringing to me is you want a resolution of the intratribal dispute. And that is something as to which there is not federal court jurisdiction. If there were an APA claim that focused only on whether the agency should have recognized this 2012 committee as opposed to someone else, is there redressability to let's say there was an abuse of discretion for that. What kind of remedy could a court order, if anything, against the agency itself? Right. So one argument potentially could be, it hasn't been made, but one argument potentially could be is, well, this would be a claim for now, not for then. Well, you are looking back 10 years. That's too long. So you shouldn't do that. So you shouldn't recognize the 2012 business committee for that reason. Maybe you should recognize nobody. Maybe you should just turn off the funding until we get this sorted out. I mean, there's a strong argument that the department doesn't like to do that, but the statute allows it because the application for funding has to be presented by an organization that represents the tribe. And at some point, theoretically, Interior could say, well, it's, you know, we're allowed to do this on an interim basis, but you're not making very much progress and we're not going to do it anymore. If Ms. Del Rosa wanted to just turn off the funding, if that's what she was asking, that could be adjudicated because that goes to Interior's decision about how it's going to conduct its government-to-government relationship with the Alturas Indian Rancheria, and that would not delve into tribal matters. And as a practical matter, counsel, for final agency actions, that's the fiscal years, let's say 2018, 2019, they could craft such an APA claim along the lines of what you're discussing, correct? I believe they could. Now, I don't know, I'm not aware of any case that's held interim can be this long and no longer, and I'm sure the United States would argue, well, even as to that decision, we have a lot of discretion, but there would be jurisdiction, I believe, to make the argument because it goes to Interior's conduct of the relationship. It wouldn't be because of any interpretation of tribal law or perhaps some other argument could be made about why funding would be inappropriate in this kind of a situation. So I do think it exists, but it was a strategic choice here. But you said that the contracts for fiscal years 2016 and 2017 have been approved? They have, yes. Contracts were issued. So these sort of APA claims, could they cover those years? At this point, I guess you could reach back six years. Now, the monies were paid, the monies have been spent. We haven't argued mootness, that gets into a whole other issue, whether the monies could be reclaimed after the funding is provided, and there's a six-year statute of limitations, but we're still within that. So, I mean, theoretically. Theoretically, right. But at this point, given the strategic choice of the plaintiff to put us back in time to ask what should have happened maybe in 2015, I think I would just respectfully suggest is not a best use of judicial resources. A new claim, and we mentioned this in our brief, a new claim would be judged against the current circumstances of what's happened in the last number of years. There could be relevant circumstances that would persuade Interior to take a different approach. At this point, we don't have the record for that. We've taken you over time, but let me see if my colleagues have any additional questions. Thank you very much. Thank you. Ms. Marston, I think you still have a couple of minutes. I'm going to try to be fast and address everything that you raised. So, first of all, the district court just dismissed for lack of subject matter jurisdiction on the grounds that this was an internal tribal dispute and the district courts didn't have any jurisdiction. The district court never considered any of the arguments that I'm making here today. In fact, when I tried to make those arguments before the district court, the district court cut me off and said, no, Mr. Marston, I'm not going to allow you an opportunity to argue those things and try to convince me that my decision is wrong. It's right in the record. You can read the court's transcript. This is a case about what's the limitations on the secretary's exercise of discretion. This is not a decision that this court or the district court needs to make. It's a decision that the secretary needs to make, and what we're talking about is what does the secretary have to consider in making those decisions. Now, we heard the government say, well, you know, the tribal court decision was later overturned once the dispute arose. Okay, well, that goes to the weight that the secretary gives the tribal court decision. All we're saying is it was an abuse of discretion for the secretary to simply ignore her administrative rule of law and not consider the tribal court's decision. She's got to consider it in deciding who she's going to recognize for purposes of 638 contracting. That's what this case is about. So all I really want this court to say is, you know what, district court, you had jurisdiction. Now, when it gets back to the district court on remand, they may, you know, assert statute of limitations as an affirmative defense. They may assert latches, but those are affirmative defenses, right? I'm talking about did the district court have the authority? Did this case arise under 1331 jurisdiction? Did the secretary violate federal law? And my position is she did. She violated her own administrative laws, and the district court had jurisdiction. And I would ask that you remand it to the district court, let us have an opportunity to amend and clarify our APA claim and give us an opportunity to have our day in court, let the government assert whatever defenses they can and try to move to dismiss on statute of limitations or other grounds, but find that the district court had jurisdiction in this case. Thank you. All right. Thank you very much to both sides for your argument today. The matter is submitted, and that concludes our argument calendar for this morning. So we'll be in recess until tomorrow. All rise.
judges: NGUYEN, SANCHEZ, Bough